THE TOMBOY GOLD MINES COMPANY (LIMITED) v. THE DISTRICT COURT OF ARAPAHOE COUNTY.

23 441
29 5

1. PROHIBITION.
If the matter be reviewable upon appeal or writ of error, prohibition does not lie.
2. FINAL JUDGMENT—ORDER.
Any order which is essentially a final determination of the issues of the case is a final judgment, regardless of how it is denominated by the trial court, and is reviewable as are other final judgments.

*Original Application for Writ of Certiorari and Prohibition.*

Messrs. WELLS, TAYLOR & TAYLOR, for petitioner.

Mr. CLINTON REED, for respondent.

PER CURIAM. In the district court of Arapahoe county Willard R. Green brought his suit against Frank L. Underwood, W. L. Carey, and The Tomboy Gold Mines Company (limited) to obtain a decree directing the defendants to deliver him three certain certificates of the capital stock of the said company aggregating 24,000 shares, if the same were not then canceled, and if they had been canceled, that the company issue and deliver to the plaintiff new certificates of stock for the same number of shares. Upon the filing of the complaint, a temporary restraining order was granted whereby any disposition of the stock by the company was forbidden until further order.

The facts are not seriously controverted, and, so far as material to the questions before us, are as follows: Underwood borrowed of Green a certain amount of money for which he gave his note, and to secure its payment pledged with Green 24,000 shares of the capital stock of the Tomboy Company, represented by three certificates, and the pledgee was authorized to sell these shares upon default in payment of, and apply the proceeds upon, the note.

Upon the company's stock books the shares stood in the name of William Bayley, and the certificates were indorsed by him in blank. The company was organized under the laws of West Virginia, and had an office in the city of New York, where its president, Underwood, and its secretary, Garey, kept the books. Green was living in Denver, and sent these three certificates to the secretary with instructions to make out new certificates therefor in the names of certain persons designated by him. Instead of following these instructions, Underwood and Garey, as president and secretary of the company, purported to cancel the certificates and issue in lieu thereof another certificate to Theodosia I. Underwood, the wife of Frank L. Underwood, upon the pretense that she was the owner thereof.

The Tomboy Company filed its answer, not traversing the material facts in the complaint, and, by its cross complaint, asked to have Theodosia I. Underwood made a party to the

suit, so that the question of the title to the stock might be determined as between her and the plaintiff Green. The court ordered her to be made a party, and she appeared and filed her answer. Subsequently, upon motion of plaintiff, the previous order of the court making Mrs. Underwood a party was vacated, and her answer stricken from the files.

It appearing that his three certificates had not been canceled, as represented to him by Underwood, upon plaintiff's application they were delivered into court, as was, also, upon the company's request, the certificate which had been issued to Mrs. Underwood, where they were to be retained until disposed of by the final order of the court. Thereafter, Green, desiring possession of these certificates in order that he might appear at a meeting of the stockholders of the company about to be held and vote these shares, obtained an order for their delivery to him, in which order was inserted a restrictive clause that they were held by Green, as pledgee, and should be used by him only for the purpose of voting upon them, and that he should not be permitted to sell, assign, or transfer, or in any wise incumber, the same. This limitation upon their use was indorsed upon the certificates by the clerk of the court, and, as thus indorsed, Green got them. It seems that he was not permitted at the meeting of the company to vote this stock, and, of course, could not legally sell it in accordance with the power conferred by the pledgor. He next filed his petition in the court asking to have these limitations removed, which, if granted, would have left in his possession the certificates without any restriction whatever upon them, and would place him in possession of the stock with the same control over it that he had before he sent them to the company for transfer.

After the court had set for hearing this petition of plaintiff, The Tomboy Gold Mines Company filed in this court its original application for a writ of certiorari, for a review of the order of the court by which its previous order making Mrs. Underwood a party to the suit was vacated, and for a writ of prohibition to restrain the court from proceeding to

a determination of the motion to remove the conditions attaching to the stock. The application is based upon the grounds that the court had gone beyond, and was exceeding, its powers, and greatly abusing its discretion, in that it was without jurisdiction to proceed unless Mrs. Underwood was a party, and that it was about to determine, upon an interlocutory motion of plaintiff, the main and only issue in the case; which application, if granted, would give to plaintiff, in the form of an intermediate order, all the relief to which he was entitled and which he originally claimed upon a final decree in the suit; and that this interlocutory order could not be reviewed by appeal or upon writ of error.

In the view which we have taken of the application for this extraordinary remedy, it is not necessary for us to express any opinion upon the action of the district court in vacating the said order, or as to the correctness of the ruling that petitioner apprehends may be made upon plaintiff's pending application below. Its counsel concede (what is the unquestioned law) that if the order which the court may make upon said application to remove from these certificates the restrictions under which they are now held, is a final order from which an appeal can be taken, or to which a writ of error lies, the present application to this court should not be entertained, even though in either, or both, of the particulars mentioned, the district court exceeded its lawful powers.

That such is the law of this state under our code, there is no question. Chapter 28, Code of 1887. The plaintiff entitles his pending application in the district court a petition for the removal of certain existing restrictions upon the stock in controversy. The particular name that a party may give to a pleading does not necessarily or conclusively constitute it as of the character designated. That must be determined from the facts set up in the pleading, in connection with the order or judgment which is to be rendered upon it. We are satisfied that the petition or motion is in the nature of a motion for judgment upon the pleadings. This is manifest from the fact that there is substantially, as the pleadings in

the district court now stand, no controversy as to the material facts. If the court should grant the application, it gives to the plaintiff the only relief which he seeks, and while the plaintiff may suppose that the application is interlocutory in its nature, and though the trial court might denominate its ruling thereon as not final, but merely intermediate, yet, if the order be granted in accordance with plaintiff's request, it is, in its very essence and nature, a final determination of the issues in the case, and the judgment would be final and reviewable as are other final judgments. It is significant in this connection to note that when, in the earlier history of this case, the plaintiff applied to the district court for an order for the delivery of these certificates, he designated his pleading a motion for judgment on the pleadings. Had his application then been granted, as demanded, precisely the same relief would have been given as would follow were the court now to remove from the stock the existing limitations.

From this it follows that if the ruling, as anticipated by the petitioner company in this case, should be in favor of the plaintiff, whatever relief, if any, it is entitled to can be had, and whatever errors, jurisdictional or otherwise, committed by the lower court, can be reviewed, upon an appeal from, or writ of error to, that judgment. The rule upon the district court heretofore issued commanding it to show cause, and in which further proceedings by said court were stayed until further order of this court, is therefore discharged, and the application is dismissed at the costs of petitioner.

*Petition dismissed.*