299 S.W.2d 8 (1957)
FARNSWORTH & CHAMBERS COMPANY, INC.
v.
LOCAL UNION 429, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL, etc., et al.
Supreme Court of Tennessee.
February 8, 1957.
*9 Moore, Crownover, Branstetter & Folk, Nashville, for appellants.
Bass, Berry & Sims, Nashville, for appellees.
PREWITT, Justice.
The demurrers filed to the original and supplemental bill raises one issue, that is, whether the Courts of Tennessee have the power to enforce the right to work law, T.C.A. § 50-208, or whether it was the intention of Congress in the enactment of the Labor Management Act, Taft-Hartley Law, 29 U.S.C.A. § 141 et seq., to so exclusively pre-empt the field of Labor Management Relations in interstate commerce as to remove the matter from the jurisdiction of the State Courts.
The complainant, Farnsworth & Chambers Company, Inc., is a corporation organized under the laws of the State of Delaware, and qualified to do business in Tennessee, filed its original bill in the Chancery Court of Sumner County against the defendant, Local Union 429, International Brotherhood of Electrical Workers. A stipulation was filed in which it was agreed that the complainant was a business engaged in interstate commerce, or an activity affecting commerce in contemplation of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141, et seq.
The purpose of the bill was to enjoin the defendant from picketing around the business of complainant at Gallatin.
It seems that before this a representative of the Labor Union approached the manager of complainant and protested that complainant was not employing union labor and threatened to picket the plant if union laborers were not employed. Complainant refused to employ union labor and picketing resulted.
Thereupon this injunction bill was filed. The Chancellor on the hearing of the bill and demurrers sustained the injunction.
The general rule that State Courts may grant injunctive relief against carriers applies not only to intra but also to interstate carriers. This equity jurisdiction of Chancery Court in this State was not superseded by our statutes relating to the Tennessee Public Service Commission, but was supplemented by one of these provisions. T.C.A. § 65-1523.
The appellants, however, deny that such jurisdiction exists in this case. As we understand, they do not deny that their conduct violated the law of this State. They undertake to justify their conduct upon the claim that the employees were governed by the provisions of the National Labor Relations Board.
Congress, in the enactment of the Wagner Act, 29 U.S.C.A. sec. 151 et seq., and the Taft-Hartley Law, did not enter upon the entire field of labor management relations and exclusively pre-empt state action therein but rather entered a limited area of the field of labor management relations. Weber v. Antheuser-Busch, *10 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546.
"Provisions of the Taft-Hartley Act make it even clearer than the National Labor Relations Act that the States are left free to pursue their own more restrictive policies in the matter of union-security agreements * * *.
"`Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.'" Algoma P. & V. Co. v. Wisconsin Emp. Rel. Bd., 336 U.S. 301, 313, 314, 69 S.Ct. 584, 591, 93 L.Ed. 691.
Since the enactment of the Taft-Hartley Act, the court of last resort of every State in which there exists an open shop statute has upheld the power and duty of the State Courts to enforce the provisions of the statute.
Mascari v. International Brotherhood, 187 Tenn. 345, 355, 215 S.W.2d 779; Woodward v. Collier, Ga. 1953, 33 L.R.R.M. 2247; Town House, Inc., of Boston v. Hurley, Mass. 1950, 25 L.R.M. 2652; Construction Labor Union, etc., et al. v. Stephenson, Tex. 1950, 25 L.R.R.M. 2228; Ostroff v. Laundry and Dye Work Drivers Local Union, Wash. 1950, 27 L.R.R.M. 2232; also Wisconsin, Arizona, Nevada, Arkansas, Virginia and North Dakota.
It seems clear to us from the language of the Taft-Hartley Law, and from the Wagner Act which preceded the Taft-Hartley Law, that it was not the purpose of the Federal Congress to usurp the entire field of labor management relations in Interstate Commerce, but much is reserved to the State. By entering upon a field of legislation, the Federal Congress does not, ipso facto, usurp or pre-empt the entire field, but only insofar as the Federal Government specifically regulates activity in that field is the State precluded from action. See Allen-Bradley Local No. 1111 v. Wisconsin Emp. Rel. Bd., 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154; Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; Garner v. Teamsters, C. & H. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228.
When a suit upon a matter of labor relation is brought in a state court and the court's jurisdiction is denied, the court must determine the question for itself. It cannot stop and refer the question to the board; nor will a federal court interfere to forestall the state court's determination. Amalgamated Clothing Workers of A. v. Richmand Bros., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600.
In this case the Court said:
"We cannot assume that this confidence (in state courts) has been misplaced. Neither the course of this case, nor the history of state court actions since the decision in Garner v. Teamsters, C. & H. Local Union, No. 776 (A.F.L.), 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, demonstrate recalcitrance on the part of state courts to recognize the rather subtle line of demarcation between exclusive federal and allowable state jurisdiction over labor problems."
It seems from the decisions that matters of local concern, such as labor relations, over which the several states have exercised jurisdiction, remain in state power unless and until they are pre-empted by Congress, by virtue of the Commerce and Supremacy clauses of the federal Constitution; and in a given case the intent of Congress to exclude state power must be clearly manifested. Allen-Bradley Local U.E.R.M.W. v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820.
*11 In order to exclude state power over a given type of conduct in labor relations, two things must concur: (1) Congress must clearly have manifested an intent to pre-empt such conduct and withdraw if from state control; and (2) it must have provided a federal remedy for injury caused by such conduct. In the absence of such remedy, such conduct will be subject to concurrent jurisdiction of both the state's and the federal authority. United Const. Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025.
In Mascari v. International Brotherhood, etc., 187 Tenn., 345, 355, 215, S.W.2d 779, 783, this Court says:
"Ours is a dual system of Government and oftentimes Congress legislates on matters contrary and supplemental to State enactments. In the case of Bethlehem Steel Company et al. v. New York Labor Relations Board et al., 330 U.S. 767, 67 S.Ct. 1026, 1020, 91 L.Ed. 1234, 1245, Mr. Justice Jackson, in the course of his opinion, said:
"`It long has been the rule that exclusion of state action may be implied from the nature of the legislation and the subject matter although express declaration of such result is wanting. * * *"
"`In the National Labor Relations Act (29 U.S.C.A. sec. 151 et seq.), Congress has sought to reach some aspects of the employer-employee relation out of which such interferences arise. It has dealt with the subject or relationship but partially, and has left outside of the scope of its delegation other closely related matters. Where it leaves the employer-employee relation free of regulation in some aspects, it implies that in such matters federal policy is indifferent, and since it is indifferent to what the individual of his own volition may do we can only assume it to be equally indifferent to what he may do under the compulsion of the state.'"
It is the opinion that our Courts have jurisdiction in cases of this nature.
It results that we find no error in the decree of the Chancellor and it is affirmed.