BOARD OF COUNTY COMMRS. OF FRANKLIN COUNTY, APPELLEE, *v.* INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL No. 683, ET AL., APPELLANTS.

(No. 9308—Decided February 18, 1969.)

*Mr. C. Howard Johnson,* prosecuting attorney, and *Mr. Tommy L. Thompson,* for appellee.

*Messrs. Topper & Alloway* and *Mr. N. Victor Goodman,* for appellants.

TROOP, J. The Board of County Commissioners of Franklin County entered into contracts for the construction of an addition to the Juvenile Detention Center on or about November 28, 1967. Bids were accepted from the lowest and best bidder, according to statutes made and provided, including that of Pence Electric Company for the electrical work on the center. The contract was authorized January 23, 1968. Pence Electric Company operates a nonunion shop.

Section 307.02, Revised Code, authorizes the county commissioners to provide a courthouse and other county building facilities, including a "detention home." Section 2151.34, Revised Code, sets out certain requirements as to the detention of minor offenders, which necessitates provision for a "detention home" or "juvenile center." The requirements are found in the part of the section, as follows:

"No child under eighteen years of age shall be placed in or committed to any prison, jail, or lockup, * * * or other place where such child can come in contact or communication with any adult convicted of crime or under arrest and charged with crime, * * *."

The section further provides that upon the recommendation of the judge the county commissioners shall provide a detention home.

Construction of the building began and progressed until the defendant labor union established pickets at various locations around the area of the new center. The picketing was peaceable and appears to have been done by "stranger pickets." The picketing, which began about September 30, 1968, caused a complete work stoppage because members of unions employed in the building construction refused to cross the picket line. Because of the building project, boilers supplying heat for a portion of

.the building occupied by one hundred minor children were inoperable and could not be made operable until construction on the new building was resumed.

The county commissioners sought a temporary and a permanent injunction against the picketing. The Court of Common Pleas granted the temporary order and, on motion of the defendants to dissolve the temporary order, and following a hearing on the pleadings, the evidence and the motion, overruled the motion and made the restraining order permanent. An appropriate journal entry was filed October 30, 1968, from which order this appeal is taken on questions of law.

The appellants, the local union *et al.,* assert five assignments of error. A basic objection to the jurisdiction of the Common Pleas Court is the nub of the position taken by the appellants. Supporting contentions are that the order of the trial court, against peaceful picketing, violates the guarantees of the First Amendment as it is incorporated by the Fourteenth Amendment to the U. S. Constitution, and that the trial court did not respect the supremacy clause, Article VI of the U. S. Constitution. This review will be addressed to the total problem rather than to the particular numbered assignment of error.

A survey of the cases cited leads to the conclusion that there is one area in which the jurisdiction of state courts remains uncontested, those characterized by violence. (*Milk Wagon Drivers Union* v. *Meadowmoor Dairies, Inc.* [1941], 312 U. S. 287; *United Automobile, Aircraft & Agriculture Implement Workers* v. *Wisconsin Employment Relations Board* [1956], 351 U. S. 266.) Other cases provide decisions that appear to be equivocal, conceding possible state jurisdiction where activity involved is of "peripheral" concern. For example, *Linn* v. *United Plant Guard Workers of America* (1966), 383 U. S. 53, in which the court also refers to "deeply rooted" local interests.

Most commonly, peaceful picketing situations have been held to be under the jurisdiction of the National Labor Relations Board, and denied to the states under the federal supremacy rule, by both federal and state courts.

Variations from the general rule are not significant. (See *United Mine Workers of America* v. *Arkansas Oak Flooring Co.* [1956], 351 U. S. 62; *Hotel Employees Union* v. *Sax Enterprises, Inc.* [1959], 358 U. S. 270; *Youngdahl* v. *Rainfair* [1957], 355 U. S. 131; *Grimes & Hauer, Inc.,* v. *Pollock* [1955], 163 Ohio St. 372; *Richmond Bros. Co.* v. *Amalgamated Clothing Workers of America* [1959], 168 Ohio St. 560; and *Sherlock Baking Co.* v. *Bakery Drivers, Chauffeurs & Helpers Union* [1959], 111 Ohio App. 443.)

There are other decisions that seem to encourage the exercise of state jurisdiction by suggesting that state courts have jurisdiction unless the activities involved are specifically assigned to the control of the National Labor Relations Board by congressional act or court decision. Both federal and state courts have so held. (Illustrative cases are *Garner* v. *Teamsters Union* [1953], 346 U. S. 485; *Vaca* v. *Sipes, Admr.* [1967], 386 U. S. 171; and *State, ex rel. Utility Workers Union of America,* v. *Macelwane, Judge* [1961], 116 Ohio App. 183.)

Cases on all fours as to fact pattern, that is involving a public agency, or body, in the process of performing a governmental function by the using of a general contractor, who in turn uses a subcontractor who employs nonunion men, thus provoking peaceful picketing, are rare indeed. The case of *Plumbers, Steamfitters, Refrigeration, Petroleum Fitters & Apprentices* v. *County of Door* (1959), 359 U. S. 354, is, however, just that case. The court's decision squarely puts the activity in such situation within the exclusive jurisdiction of the National Labor Relations Board and holds that a state court has no jurisdiction.

The syllabus points out that the relative importance of the cost of materials to the total cost of the project brings the controversy within the range of interstate commerce. (See *Smith* v. *Noel* [1963], 91 Ohio Law Abs. 97.)

The syllabus says:

"(b) The dispute involved is the kind over which the Board normally has exclusive power."

As if to preclude the possible controverting argument that the National Labor Relations Act excludes a

"county" from the definition of "employer," the syllabus concludes as follows:

"(c) That one of the parties is a county and that political subdivisions are expressly excluded from the definition of 'employer' in the National Labor Relations Act does not prevent the Board from having jurisdiction."

However "peripheral" the activity, however "deep-rooted" the interest of the state appears to be, the Supreme Court of the United States has construed the provisions of the National Labor Relations Act as pre-empting the jurisdiction of the state in the instant case.

The judgment of the trial court is reversed, the permanent restraining order allowed by the court is revoked and held for naught, and the cause remanded for the entry of appropriate orders and such other matters required by law and in accordance with this decision.

*Judgment accordingly.*

DUFFY, P. J., and GUERNSEY, J., concur.

GUERNSEY, J., of the Third Appellate District, sitting by designation in the Tenth Appellate District.